## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**RAYMOND A. MELANEY,**

        **Plaintiff,**

**v.**                                                    **Case No: 6:22-cv-511-PGB-EJK**

**HARBOR FREIGHT TOOLS
USA, INC.,**

        **Defendant.**

_____/

## ORDER

This cause is before the Court on the following:

1. Plaintiff Raymond A. Melaney's ("**Plaintiff**") Motion for Partial Summary Judgment (Doc. 35 (the "**Plaintiff MSJ**")), Defendant Harbor Freight Tools USA, Inc.'s ("**Defendant**") response thereto (Doc. 38), and Plaintiff's subsequent reply (Doc. 41);

2. Defendant's Motion to Exclude Plaintiff's Expert Witness Orion R. Keifer's Testimony and Report (the "***Daubert* Motion**") and Plaintiff's response thereto (Doc. 39); and

3. Defendant's Motion for Summary Judgment (Doc. 37 (the "**Defendant MSJ**")), Plaintiff's response thereto (Doc. 40), and Defendant's subsequent reply (Doc. 43).

Upon consideration, the Plaintiff MSJ is due to be granted in part, the *Daubert* Motion denied, and the Defendant MSJ denied.

## I.    BACKGROUND[1]

This dispute stems from injuries Plaintiff sustained while using a ladder for home improvement purchased from Defendant. (Doc. 1-1). Defendant sells a range of home improvement tools, including ladders. (Doc. 1-2, ¶ 9). On March 22, 2021, Plaintiff purchased the ladder in question from Defendant's store in Daytona Beach, Florida. (Doc. 40-1; Doc. 40-2, pp. 4–5). The ladder is a seventeen-foot Franklin Type IA Multi-Task Ladder graded to hold up to 300 pounds. (Doc. 36-1, p. 3; Doc. 36-2, ¶ 2). One of the ladder's advertised configurations is as an extension ladder. (Doc. 40-3).

On April 23, 2021, Plaintiff, a 230-pound male, used the ladder in its extension configuration to tape the exterior of his home in preparation for painting it. (Doc. 40-4, 6:21–23, 74:23–75:1, 81:4–83:24). After taping part of his roof, Plaintiff began to descend down from the top rungs of the ladder in order to retrieve paint. (*Id.* 83:6–84:12). Plaintiff's wife held the bottom of the ladder in an attempt to secure it when he began to descend. (Doc. 40-5). Plaintiff fell from near the top of the ladder at some point after placing at least one of his hands on the ladder. (Doc. 40-4, 84:22–86:5, 179:16–183:16). After Plaintiff's fall, the second

---

[1] The parties failed to file a jointly signed stipulation of agreed material facts along with the summary judgment briefing as required by the Court's Case Management Scheduling Order. (Doc. 13, p. 8) ("Fourteen (14) days before a party files a motion for summary judgment, counsel for all parties affected by the motion shall meet and confer to create a Stipulation of Agreed Material Facts which will be deemed admitted for the purpose of the motion. The Stipulation shall be filed with the Court."). The Court nevertheless finds itself capable of sifting through the admissible record. Accordingly, while under no obligation to do so, the Court will still consider the summary judgment motions.

rung from either the top or the bottom of the ladder was found detached and lying on the ground. (Doc. 40-4, 85:8–21, 181:4–9; Doc. 40-5, 38:17–39:19; Doc. 36-8).

Plaintiff sustained at least some injuries from the fall, and paramedics took him to the hospital for treatment. (Doc. 40-5, 43:24–45:19). According to the medical records, Plaintiff reported that "he was getting off the roof when the ladder broke, causing him to fall to the ground" and to "los[e] consciousness." (Doc. 40-6).

On December 14, 2021, Plaintiff filed this lawsuit in state court to recover for his injuries. (Doc. 1-1). Defendant then timely removed to this Court. (Doc. 1). In his Complaint, Plaintiff states claims for strict liability, negligence, and breach of the implied warranty of merchantability arising from the ladder's allegedly defective and unmerchantable condition when it was sold. (Doc. 1-1). Defendant timely answered Plaintiff's claims and asserted twelve affirmative defenses, including three at issue here. (Doc. 1-2).

Defendant asserts in the third affirmative defense that other non-party tortfeasors, including the manufacturer of the ladder Jiangsu Yingdeli Industrial Co., Ltd. ("**Non-Party Jiangsu**"), caused Plaintiff's injuries, if any, through negligent or otherwise improper conduct (the "**Non-Party Affirmative Defense**"). (*Id.* at p. 5). Defendant further asserts in the sixth affirmative defense asserts that "the finder of fact shall consider the state of the art of scientific and technical knowledge and other circumstances that existed at the time of manufacture of the ladder, not at the time of loss or injury, in accordance with"

3

FLA. STAT. § 768.1257 (the "**State-of-the-Art Affirmative Defense**"). (*Id.* at p. 6–7). Defendant also asserts in the seventh affirmative defense that, pursuant to FLA. STAT. § 768.1256, "it complied with all relevant government rules, regulations and standards with regard to the design, manufacture, testing, and inspection of the subject lift ladder, and as such, is entitled to a rebuttable presumption on non-liability" (the "**Government Rules Compliance Affirmative Defense**"). (*Id.* at p. 7).

During discovery, Plaintiff and Defendant both secured experts to elucidate the cause of Plaintiff's injuries. Plaintiff retained mechanical engineering expert Orion P. Keifer ("**Mr. Keifer**"), and on October 3, 2022, Plaintiff disclosed Mr. Keifer as a retained expert witness and produced his initial written report. (Docs. 39-2, 39-3). In his report, Mr. Keifer describes his investigation of the ladder and the reported events on the day in question, ultimately opining that Plaintiff's fall was caused due to the ladder's detached rung sustaining a material overload almost to the point of failure *prior to Plaintiff's purchase* from Defendant, which further caused the rung to detach, Plaintiff's fall, and thus Plaintiff's injuries. (Doc. 39-3, p. 9).

Defendant retained mechanical engineering expert Dr. Lee Swanger ("**Dr. Swanger**") and biomechanical expert Jacob L. Fisher ("**Mr. Fischer**"). (Doc. 36-1, pp. 2–4; Doc. 35-7, Doc. 35-8). Dr. Swanger submitted an expert report on November 1, 2022, concluding in part that the ladder was not defective in design or manufacture and that instead a single dynamic overload caused the ladder and

its rung's failure, not a "pre-crack." (Doc. 36-7, pp. 12–13). Mr. Fischer also submitted an expert report on November 1, 2022, concluding in part that Plaintiff fell several feet and landed feet-first on the rung in question leading to a dynamic overload when it was near the ground (not the roof). (Doc. 36-8, pp. 16–17).

Mr. Keifer produced a rebuttal report to these opinions on November 30, 2022, which elaborated on his conclusions and explained why, in his opinion, the directional material deformation of the ladder's failed rung is consistent with it being near the roof, not the ground. (Docs. 39-5, pp. 4–9).

Defendant now moves to exclude the opinions, reports, and testimony of Mr. Keifer. (Doc. 36). In addition, Defendant moves for summary judgment on all of Plaintiff's claims. (Doc. 37). Finally, Plaintiff requests partial summary judgment as to Defendant's third, sixth, and seventh affirmative defenses. (Doc. 35). After responsive briefing with respect to each motion (Docs. 38, 39, 40, 41, 43), this matter is ripe for review.

## II.   STANDARDS OF REVIEW

### A.   *Daubert* Motion Standard

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Rule 702 imposes an obligation on district courts to act as gatekeepers "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see*

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). This gatekeeping role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

The party offering an expert opinion has the burden of establishing three criteria by a preponderance of the evidence: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink*, 400 F.3d at 1291. Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid

6

litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony helps where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic considering the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Rule 403. *Daubert*, 509 U.S. at 591.

### B.    Summary Judgment Standard

To prevail on a summary judgment motion on any claim or issue, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The movant bears the initial burden of demonstrating that no genuine factual dispute exists. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Where the nonmovant bears the burden of proving the issue at trial, the moving party will satisfy this initial burden "merely by pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case." *Thurmon v. Ga. Pac., LLC*, 650 F. App'x 752, 756 (11th Cir. 2016)[2] (citing *Celotex*, 477 U.S. at 325).

Once the movant shows there is no genuine dispute of material fact, the burden shifts to the non-movant to prove that a genuine factual dispute exists which would preclude entry of summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To survive summary judgment, the non-moving party "must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Id*. The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to identify specific record evidence supporting its position, the court must enter summary judgment. FED. R. CIV. P. 56(a).

---

[2]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Importantly, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013)). At the same time, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

The Court first addresses the insufficiency of Defendant's *Daubert* Motion. Next, the Court explains why Defendant's MSJ must also fail. Finally, the Court details the reasons for Plaintiff's MSJ succeeding only in part.

### A.   The *Daubert* Motion to Exclude Mr. Keifer

Defendant does not challenge Mr. Keifer's expert qualifications or whether his testimony will assist the trier of fact. (*See* Doc. 36-1). Instead, Defendant argues that, for a litany of reasons, his opinions are not sufficiently reliable. (*Id.*). Not so.

Defendant first challenges the admissibility and use of Mr. Keifer's rebuttal report as "untimely" because it was submitted "nearly two months" after the

disclosure deadline detailed in the Case Management Scheduling Order. (Doc. 36-1, pp. 2, 4–5). The Court disagrees. When (as here) a deadline for rebuttal expert reports is not provided for in the Case Management Scheduling Order, the parties must serve a rebuttal, if any, "within 30 days after the other party's disclosure." *Demeritt v. Wal-Mart Stores East, LP*, No. 6:20-cv-89, 2021 WL 2835343, at \*3 (M.D. Fla. May 4, 2021) (quoting FED. R. CIV. P. 26(a)(2)(D)(ii)). Thus, Mr. Keifer's rebuttal report, served twenty-nine days after Dr. Swanger and Mr. Fischer's reports, is properly before the Court.

Defendant next states that Mr. Kiefer produced either, at worse, a non-existent or, at best, a minimal methodology for it to attack or evaluate, specifically with respect to his conclusion that the ladder was pre-cracked prior to sale. (Doc. 36-1, p. 8). To the contrary, Mr. Keifer reviewed the evidence produced in discovery, detailed his laboratory inspection and testing of the ladder, explained his consideration of a chemical analysis of the ladder and the rung, and stated his rationale for his conclusions, including his reasons for disagreeing with Dr. Swanger and Mr. Fischer. (Docs. 39-3, 39-5). In particular, Mr. Keifer expounded on his conclusion that Plaintiff's fall occurred "due to a previous overload of the rung almost to the point of failure" by connecting his observations of the weld defects and fractures to other record evidence. (Doc. 39-3, pp. 2–7). Accordingly, allowing Mr. Keifer's testimony is not the Court simply "taking the expert's word for it." (Doc. 36, pp. 7–8) (citing *U.S. v. Fraizer*, 387 F.3d 1244, 1265 (11th Cir. 2004)).

Defendant further argues that Mr. Keifer ignores evidence, in particular, testimony from Plaintiff's wife. (Doc. 36-1, pp. 2–3, 5, 9). However, Mr. Keifer's conclusions are not necessarily inconsistent with this testimony, and it was not in error for Mr. Keifer to reach conclusions similar to Plaintiff's averred version of the contested-events rather than a Defendant-friendly version when the facts in question are exactly what is in dispute.

Defendant finally argues Mr. Keifer's opinions are unreliable because they fail to address or rebut Dr. Swanger and Mr. Fischer's collective opinion that the rung detached upon Plaintiff falling and impacting it with a single dynamic overloading force that exceeded the rung's weight capacity. (Doc. 36-1, pp. 9–10). Defendant, however, does not point the Court to any *per se* rule requiring an expert to rule out every alternative theory proposed by opposing experts. This makes sense as it would turn *Daubert* motion practice into a game where the last contestant to fire a shot would usually win. Certainly, the Court acknowledges that a proposed expert witness's failure to consider potential alternatives might at some point make those opinions unfit to be presented to a jury. *See Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010) ("Although a differential diagnosis of a plaintiff's injury need not rule out all possible alternative causes to be sufficiently reliable to permit admission of an expert's testimony on causation, it must at least consider other factors that could have been the sole cause of the plaintiff's injury; a differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for

an opinion on causation."). The Court concludes, though, that the alternative causation theories proposed by Defendant's experts are not so obvious that Mr. Keifer necessarily should have preemptively addressed them or rebutted them in their entirety.

Mr. Fischer and Dr. Swanger's opinion that a single dynamic overload broke the ladder is dependent on the factual assertion that Plaintiff fell on the rung in question rather than fell from it. (*See* Docs. 36-7, 36-8). Mr. Keifer rebuts this assertion by explaining why, in his opinion, the directional shearing is inconsistent with the rung being near the ground upon breaking. (Doc. 39-5, pp. 4–9) ("Dr. Swanger ignores the directionality of the deformation" and "[i]ntegral in the scenario [described by Mr. Fischer] is that the failed rung was toward the bottom of the latter (second rung up from the patio surface) and that the failure was caused by Mr. Melaney impacting the rung during the fall. The direction of force in his scenario would have to be from the ladder's center hinge to the ladder end. However, the bending of the rails demonstrates that the force that detached the rung was from the ladder end toward the hinges, opposite that of Dr. Fisher's scenario. Therefore, his scenario is inconsistent with the physical evidence and false.").

Ultimately, while Mr. Keifer could have done more to explain his various opinions or to reject potential counter-theories, these deficiencies do not render his opinions altogether unreliable but rather speak to their relative probative

weight.[3] As Plaintiff satisfies its burden to show that Mr. Keifer's testimony will be sufficiently reliable to present to a jury, the *Daubert* Motion is denied.[4]

### B.    Defendant Motion for Summary Judgment

Defendant first argues that with Mr. Keifer precluded from testifying, Plaintiff has no record evidence to support the causation elements of its claims, specifically that the ladder was defective or weakened when Defendant sold it to Plaintiff. (Doc. 37-1, pp. 4, 6–10). As the Court has denied the request to exclude Mr. Keifer, the Court summarily disagrees.

In the alternative, Defendant argues that even if the Court allows Mr. Keifer's expert testimony, Plaintiff still has not put forward sufficient record evidence to create a genuine dispute of material fact regarding the causation elements of his remaining claims.[5] (*Id.* at pp. 10–12). Specifically, Defendant argues that there is no evidentiary link in the record between a manufacturing

---

[3]   The Court notes that the Daubert Motion is due to be denied for the independent reason that Defendant failed to comply with Local Rule 3.01(g) which requires the parties to certify they have conferred in good faith in an attempt to resolve certain motions prior to filing them.

[4]   Defendant further notes that Mr. Keifer's testimony is subject to the requirements of Federal Rule of Evidence 403. (Doc. 36-1, pp. 6–7). The Court agrees as all potential evidence is subject to this rule. Nevertheless, Defendant fails to articulate why Rule 403 applies in this case, and the Court declines to fill in the blank for Defendant.

[5]   Plaintiff notes that he "withdraws his strict liability, negligence, and breach of implied warranty claims to the extent they are premised on design and warning theories of defect." (Doc. 40, p. 7 n.1). Accordingly, the Court declines to address these theories.

defect in the ladder present at the time of sale and Plaintiff's injuries. (*Id.*).[6] For the following reasons, Defendant's arguments are misplaced.

In Florida products liability actions, "a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224 (M.D. Fla. 2009) (quoting *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998)). Each of Plaintiff's claims is premised on the allegation that the ladder contained a manufacturing defect and was therefore unmerchantable, unfit, and unreasonably dangerous for its intended use when Defendant sold it.

Plaintiff's allegations find at least some support in the record. In short, Plaintiff puts forward record evidence through his testimony, his wife's testimony, and the opinions of Mr. Keifer supporting a circumstantial factual finding that, when he was using it in the intended manner, the ladder's second rung from the top was already weakened due to a manufacturing defect present upon purchase and thus failed when Plaintiff placed his hand and weight on it to begin to descend from near his roof; in contrast, Defendant puts forward record evidence supporting a factual finding that Plaintiff fell on the subject rung when it was second from the ground, thus breaking it due to the resulting impact's single dynamic overload. As

---

[6] Defendant asserts without elaboration that a *Cassisi* inference is inapplicable here. *See Cassisi v. The Maytag Co.*, 396 So. 2d 1140, 1150–51 (Fla. 1st DCA 1981) (holding a product is subject to rebuttable presumption it was defective at the time of injury and sale when it malfunctions during its normal and intended use); (Doc. 37, p. 11); (Doc. 43, p. 5 n.5). As the record testimony is at least consistent with Plaintiff's version of events and the Court is required to draw all inferences in favor of the non-moving party, the Court disagrees.

both inferences are reasonable and speak to the causation element in each of Plaintiff's claims, a jury must settle this dispute. *See Cordova v. Louisville Ladder, Inc.*, No. 8:06-cv-885-T-17MAP, 2008 WL 11440534 (M.D. Fla. Nov. 7, 2008) (denying summary judgment to a defendant by concluding single rivet breaking on a ladder while used by plaintiff in intended fashion was evidence of a defect).

### C.    Plaintiff's Motion for Partial Summary Judgment

As explained below, Plaintiff's MSJ succeeds with respect to the Non-Party and Government Rules Compliance Affirmative Defenses but is otherwise denied as moot.

### 1.    *Non-Party Affirmative Defense*

Defendant's Non-Party Affirmative Defense asserts that Plaintiff's injuries were caused in whole or in party by Non-Party Jiangsu, which designed and manufactured the ladder. (Doc. 1-2, p. 5; Doc. 38, pp. 4–5). This affirmative defense, sometimes referred to as the *Fabre* defense as it flows from the Florida Supreme Court's decision in *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993), establishes that an injured parties' damages must be apportioned among all responsible parties who contributed to a tort even though not all of them have been joined as defendants. *Pantages v. Cardinal Health 200, Inc.*, No. 5:08-cv-116, 2009 WL 10670299, at *2–3 (M.D. Fla. July 31, 2009) (noting federal procedural rules apply in federal court, not state procedural rules, and denying summary judgment to preclude *Fabre* defense as genuine dispute in the record regarding the fault of a non-party remained). The *Fabre* defense requires that in order for a

defendant to include a nonparty on the verdict form: 1) the defendant must specifically identify and plead as an affirmative defense the negligence of the non-party; and 2) satisfy their burden of presenting evidence at trial that the non-party's fault contributed to the accident. *Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1264 (Fla. 1996).

Defendant focuses narrowly on the *Fabre* defense's requirement that evidence of non-party fault be produced *at trial* for evaluation by a jury. (Doc. 38, pp. 1–2) (emphasis added). Defendant argues it need only plead the affirmative defense and identify the non-party (here, Non-Party Jiangsu) to survive summary judgment as "it is the jury's role to determine whether Defendant has met this burden." (*Id.* at p. 2). Alas, Defendant skips a procedural step.

As with any other issue of fact, if the party bearing the burden for that issue fails to marshal evidence for it during discovery, a moving party points this failure out to the Court, and this failure goes unrebutted by record evidence, the Court may enter summary judgment on this issue prior to trial. *Thurmon*, 650 F. App'x at 756; *see also Lagueux v. Union Carbide Corp.*, 861 So. 2d 87, 88 (Fla. 4th DCA 2003) ("there must be evidence of the non-party's fault before the issue can go to the jury.") (citations omitted). In other words, the *Fabre* defense's requirement that a party present evidence of non-party fault *at trial* does not immunize that party from a summary judgment motion when it fails to present any record evidence in support *after the close of discovery but prior to trial*. As Defendant fails to here provide any evidence that Non-Party Jiangsu's fault contributed in any

way to Plaintiff's injuries, the Court will grant summary judgment on this issue and bar Defendant from asserting the Non-Party Affirmative Defense at trial.

### 2.   *The State-of-the-Art Affirmative Defense*

FLA. STAT. § 768.1257, the source of law for Defendant's State-of-the-Art Affirmative Defense, provides that it applies in "action[s] based upon defective design." Plaintiff notes that it has provided notice of withdrawal of those portions of its claims which are premised upon a design defect theory. (Doc. 40, p. 7 n.1; Doc. 41, pp. 3–4). The Court will thus deny this portion of Plaintiff's MSJ as moot as the parties no longer present an adversarial issue for the Court to adjudicate.

### 3.   *The Government Rules Compliance Affirmative Defense*

The Government Rules Compliance Affirmative Defense provides the following:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm:
>
> > (a) Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;
> >
> > (b) The codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and
> >
> > (c) Compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product.

FLA. STAT. § 768.1256(1). In other words, Defendant as the seller of the ladder is entitled to a rebuttable presumption that the ladder was not defective or unreasonably dangerous if it can demonstrate the ladder (a) complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing Plaintiff's injury; (b) the codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and (c) compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the ladder. *Id.*

Defendant points the Court to Dr. Swanger's report maintaining the ladder complied with the American National Standards Institute ("**ANSI**") A14.2, (Doc. 38-5, p. 4), which Defendant argues incorporates the Occupational Safety and Health Administration ("**OSHA**") Standard No. 29 C.F.R. § 1926.1053. (Doc. 38, pp. 7–9). Even so, the Court agrees with Plaintiff these standards do not entitle Defendant to the rebuttable presumption available under FLA. STAT. § 768.1256(1) as compliance with either the ANSI standard or the OSHA regulation was not necessary for the sale or distribution of the ladder. (Doc. 41, pp. 4–6).

ANSI A14.2 expressly states the standard "does not in any respect preclude anyone . . . from . . . marketing . . . products . . . not conforming to the standard." (Doc. 35-4, pp. 3, 10; Doc. 35-5, pp. 3, 12). Put simply, compliance with ANSI A14.2 is not required for selling or distributing the ladder. Similarly, 29 C.F.R. § 1926.1053 app. A, which Defendant cites for the proposition that ANSI is incorporated into the Code of Federal Regulations by reference, (Doc. 38, p. 8),

provision "[t]his appendix serves as a *non-mandatory* guideline *to assist employers* in comply with the ladder loading and strength requirements of § 1926[]." Nowhere in the entirety of 29 C.F.R. § 1926 does the regulation state it applies to the sale or distribution of ladders. Rather, the regulation, as an OSHA standard, appears to delineate the required conditions for use of ladders *by employers in the workplace. See id.* Defendant fails to direct the Court to any other code, statute, rule, regulation, or standard with the force of law demonstrating otherwise. (Doc. 38, pp. 7–10). Accordingly, there is no genuine dispute that Plaintiff is entitled to preclude Defendant from asserting the Government Rules Compliance Affirmative Defense at trial as a matter of law.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Plaintiff's MSJ (Doc. 35) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.   Plaintiff's MSJ is **GRANTED** with respect to the Defendant's third affirmative defense, referred to herein as the Non-Party Affirmative Defense, and Defendant's seventh affirmative defense, referred to herein as the Government Rules Compliance Affirmative Defense;

   b.   Plaintiff's MSJ is otherwise **DENIED AS MOOT**;

2.   Defendant's *Daubert* Motion (Doc. 36) is **DENIED**; and

3.   Defendant's MSJ (Doc. 37) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on May 12, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties